**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CURTIS JAMES JACKSON, III,

                              Plaintiff,

          -against-

CHERI MEDIA, LLC,

                              Defendants.

_____

CHERI MEDIA, LLC,

                    Counterclaim Plaintiff,

          -against-

CURTIS JAMES JACKSON, III,

                    Counterclaim Defendant.

Case No. 18-cv-5934


**ANSWER AND**
**COUNTERCLAIM**


**JURY TRIAL DEMANDED**


          Cheri Media, LLC a/k/a "HipHopDX" ("Cheri Media," "HipHopDX," "Defendant," or

"Counterclaim Plaintiff"), by and through its attorneys, Sher Tremonte LLP, hereby asserts this

Answer to the Complaint and its Counterclaim against Curtis James Jackson, III, a/k/a "50 Cent"

("50 Cent," "Plaintiff," or "Counterclaim Defendant").

## INTRODUCTION

          The celebrity known as 50 Cent has maliciously used his power and influence to falsely

attack a small, independent media company for its unfavorable but entirely truthful content.

HipHopDX is an online magazine covering hip hop and rap music news, including with original

reporting.  In late June 2018, it exposed as false certain public statements made by 50 Cent

claiming to have sold the rights to a three-word catchphrase for a million dollars.  In response to

HipHopDX's truthful reporting, 50 Cent retaliated.  He falsely published to his millions of social media followers that HipHopDX's reporting was wrong, and that HipHopDX is a bogus news outlet that does not check its facts.  He then continued his malicious campaign with this very lawsuit, asserting copyright infringement in a photograph that he did not own but allegedly obtained the rights to for the sole purpose of bringing this lawsuit.

50 Cent has defamed HipHopDX.  50 Cent intentionally published false statements that HipHopDX's reporting content was inaccurate and unverified, tarnishing the company's professional reputation and causing economic harm.  False attacks by celebrities and public figures on journalists and media companies, branding them as "fake news," have become a powerful weapon for pulling readers away from otherwise respected sources.  These are not merely political or public relations issues for media companies.  Rather, they are attacks on a business and constitute classic defamation – false assertions to the public that are intended to, and do, damage a person or company in their professional reputation.

## ANSWER TO COMPLAINT

Defendant denies each and every allegation in the Complaint filed on June 29, 2018, except as follows:

1.       Defendant denies the allegations set forth in paragraph 1 of the Complaint, except admits that Plaintiff purports to bring the action described therein.

2.       Defendant denies the allegations set forth in paragraph 2 of the Complaint.

3.      Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Complaint.

4.      Defendant admits the allegations set forth in the first and third sentences of paragraph 4 of the Complaint. Defendant denies the allegations set forth in the third sentence of paragraph 4.

5.      Defendant states that Paragraph 5 of the Complaint sets forth legal assertions to which no response is required.

6.      Defendant states that Paragraph 6 of the Complaint sets forth legal assertions to which no response is required and are deemed denied.

7.      Defendant states that Paragraph 7 of the Complaint sets forth legal assertions to which no response is required and are deemed denied.

8.      Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Complaint.

9.      Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint, except admits that on June 26, 2018, Mr. Jackson published the Photograph to his Instagram account, @50cent.

10.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint.

11.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint.

12.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint.

13.     Defendant denies the allegations set forth in paragraph 13 of the Complaint and refers to Exhibit D of the Complaint for the contents thereof.

14.     Defendant denies the allegations set forth in paragraph 14 of the Complaint.

15.     Defendant denies the allegations set forth in paragraph 15 of the Complaint.

16.      Defendant admits the allegations set forth in paragraph 16 of the Complaint.

17.     Defendant denies the allegations set forth in paragraph 17 of the Complaint and refers to Exhibit D of the Complaint for the contents thereof, except admits that on or about June 28, 2018, Defendant updated the text of the article.

18.     Defendant denies the allegations set forth in paragraph 18 of the Complaint.

19.     Defendant repeats and incorporates its answers to the preceding paragraphs as though fully set forth herein.

20.     Defendant denies the allegations set forth in paragraph 20 of the Complaint.

21.     Defendant denies the allegations set forth in paragraph 21 of the Complaint.

22.     Defendant denies the allegations set forth in paragraph 22 of the Complaint.

23.     Defendant denies the allegations set forth in paragraph 23 of the Complaint.

24.     Defendant denies the allegations set forth in paragraph 24 of the Complaint.

25.     Defendant denies the allegations set forth in paragraph 25 of the Complaint.

26.     Defendant denies the allegations set forth in paragraph 26 of the Complaint.

27.     Defendant denies that Plaintiff is entitled to any of the relief requested in its "Prayer for Relief."  Defendant is entitled to a judgment in its favor, and to an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505, as well as all other appropriate relief.

28.     Defendant hereby demands a trial by jury in its defense of Plaintiff's claim.

## AFFIRMATIVE DEFENSES

29.     By setting forth the foregoing affirmative defenses, Defendant does not assume the burden of proving any issue where such burden properly belongs to Plaintiff.  Defendant hereby incorporates by reference into each Affirmative Defense below the denials and allegations set forth in its Answer above and the allegations set forth in its Counterclaim below.

### First Affirmative Defense

30.     Plaintiff's claim is barred under the doctrine of fair use because, *inter alia*, the purpose of the use was for news reporting rather than commercial use, and the work at issue was part of the subject of Defendant's news reporting.

### Second Affirmative Defense

31.     Plaintiff's claim is barred because Defendant's actions and speech are protected by the First Amendment of the United States Constitution and Article I, section 8 of the Constitution of the State of New York.

### Third Affirmative Defense

32.     Plaintiff's claim is barred because Plaintiff lacks any ownership interest in the work at issue.  Plaintiff does not have an exclusive license to the work.

### Fourth Affirmative Defense

33.     Plaintiff's claim is barred because of lack of valid assignment of the copyright. The alleged assignor of the work at issue, Christopher Conrad, did not have the power to assign all exclusive rights to the work, inter alia because Conrad had already granted rights of use in the work to others, including without limitation by virtue of the terms and conditions of the Instagram photo sharing platform.

### Fifth Affirmative Defense

34.     Plaintiff's claim is barred because Plaintiff does not have a valid copyright

registration, nor has Plaintiff alleged that he applied for a copyright registration and was refused.

Plaintiff has merely alleged that he has applied for a copyright registration, but he has not alleged

that his application for a copyright registration was either granted or refused.

### Sixth Affirmative Defense

35.     Plaintiff's claim is barred because Plaintiff lacks standing to bring this case.

Plaintiff lacks a valid interest in the copyright, as there was no valid assignment of the copyright.

Plaintiff does not have a valid copyright registration. Plaintiff has merely alleged that he has

applied for a copyright registration, but he has not alleged that his application for a copyright

registration was either granted or refused.

### Seventh Affirmative Defense

36.     Plaintiff's claim is barred by the doctrine of unclean hands.  Plaintiff attempted to

acquire the rights to the work at issue for the exclusive purpose of bringing this lawsuit and

seeking revenge on Defendant.

### Eighth Affirmative Defense

37.     Plaintiff's claim is barred because the statutory damages sought are

unconstitutionally excessive and disproportionate to any actual damages that may have been

sustained in violation of due process.

### Ninth Affirmative Defense

38.     Plaintiff's request for maximum statutory damages in the amount of $150,000 is

barred, in whole or in part, because Defendant's conduct was in good faith and with non-willful

intent at all times, and because such an award would be unjust.  Among other reasons, Defendant

published the work at issue as part of fair reporting, Plaintiff has caused the work to be widely

copied without a royalty or compensation, and Plaintiff acquired the work at issue, if at all,

solely for purposes of asserting an infringement claim.

### Tenth Affirmative Defense

39.     Plaintiff's demand for a preliminary injunction is moot because Defendant has

removed the work at issue.

### Eleventh Affirmative Defense

40.     Plaintiff is not entitled to a preliminary injunction because Plaintiff has not

suffered, and will not suffer, irreparable harm.  Indeed, Plaintiff has alleged no harm whatsoever.

### Reservation of Rights

41.     Defendant reserves the right to assert additional affirmative defenses that may be

warranted upon further development of the facts through discovery.

### COUNTERCLAIM

Counterclaim Plaintiff Cheri Media, LLC a/k/a "HipHopDX" ("Cheri Media,"

"HipHopDX," or "Counterclaim Plaintiff"), by and through its attorneys, Sher Tremonte LLP,

for its counterclaims against Plaintiff and Counterclaim Defendant Curtis James Jackson, III,

a/k/a/ "50 Cent" ("Counterclaim Defendant" or "50 Cent"), alleges as follows:

### Nature of the Action

39.     This counterclaim arises from 50 Cent's decision to intentionally defame

HipHopDX, by publishing false statements that its reporting was false and without basis, when in

fact it was true and well supported.   50 Cent's actions are vindictive and employ bully tactics in an

attempt to silence those who contradict him.

40.     50 Cent has falsely and maliciously accused Cheri Media's online magazine, hiphopdx.com, of being a purveyor of "fake news" and of not fact checking its article.

41.     50 Cent has caused HipHopDX reputational and economic harm to its business. In this action, HipHopDX seeks money damages, including punitive damages, for the severe harm 50 Cent's defamatory statement has caused.

## Jurisdiction

42.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity is present and because the amount in dispute exceeds $75,000.  50 Cent is a citizen of Connecticut and Cheri Media's sole member is a citizen of California.

43.     The Court also has supplemental jurisdiction pursuant 28 U.S.C. § 1367 because Plaintiff's claims arise under the Copyright Act, 17 U.S.C. § 101 et seq., and this Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

44.     The Court has personal jurisdiction over 50 Cent pursuant to Fed. R. Civ. P. 4, N.Y. C.P.L.R §§ 301 and 302, and Fed. R. Civ. P. 13 because, upon information and belief, 50 Cent conducts business in New York and because 50 Cent initiated this action in this Court.

## Parties

45.     Counterclaim Plaintiff Cheri Media, LLC is a limited liability company whose sole member is a citizen of the State of California.  Cheri Media owns the publication HipHopDX, an online magazine located at the website hiphopdx.com.

46.     Upon information and belief, Counterclaim Defendant 50 Cent, is a famous rapper who resides in Connecticut and conducts business in New York.

**Factual Background**

47.     50 Cent is in an enormously successful recording artist and entertainer with a huge social media presence, who routinely posts information about his career on various platforms. He often uses Instagram, in particular, to provide factual information to his fans about his products, his performances and his business deals.

48.     50 Cent has recently coined a violent catchphrase, "get the strap," which he frequently uses on social media after making threatening or debasing comments.

49.     The website urbandictionary.com defines "get the strap" as "[a] boss phrase meaning someone has ticked you off so you're going to escalate the situation," which it states was "[p]opularized by 50 Cent's Instagram posts."  On June 7, 2018, 50 Cent posted this definition on his Instagram account, @50cent.

*50 Cent Announces an Alleged*
*Deal with Bellator MMA*

50.     On June 26, 2018, in two Instagram posts, 50 Cent announced a purported million-dollar business deal with Bellator MMA, a mixed martial arts organization owned by Viacom.  50 Cent initially posted on his Instagram account the statement that he sold his catchphrase "get the strap" for "a million dollars" to Bellator MMA (the "Alleged Deal").  A true and correct copy of the Instagram post is attached as Exhibit A.

51.     Later that day, 50 Cent also posted to his Instagram account a photograph of himself and the "Bellator MMA team" (the "Photograph"), stating "get the strap all I do is win." A true and correct copy of the Instagram post is attached as Exhibit B.

52.     The Photograph depicted him smiling with a group of Viacom and Bellator MMA executives, as if to corroborate his statements of the Alleged Deal.  Upon information and belief, the individuals featured in the Photograph include Scott Coker (Bellator MMA President),

Tracey Lesetar-Smith (Bellator MMA General Counsel), David Schwarz (Bellator MMA's Senior Vice President of Marketing & Communications), Eric Burak (Bellator MMA Vice President of Digital), and George Pineda (Viacom Media Networks, Director of Business and Legal Affairs).

### *HipHopDX Accurately Reports on 50 Cent's Alleged Deal with Bellator MMA*

53.     HipHopDX is an online magazine of hip hop and rap music, criticism and news.

54.     Following 50 Cent's June 26, 2018 Instagram posts, multiple news outlets published stories reporting 50 Cent's announcement of the Alleged Deal.

55.     On June 27, 2018, Justin Ivey, a staff writer for HipHopDX, was preparing to cover the 50 Cent announcement.  Ivey acquired information that 50 Cent's announcement was not true and that Bellator MMA had not reached any deal for the use of his three-word catchphrase.  To confirm the information, Ivey contacted Ryan Grab, the Senior Director of Communications & Social Media at Bellator MMA, asking for a confirmation or denial of 50 Cent's Instagram claim about signing a deal with Bellator for his "get the strap" catchphrase.

56.     That day, Grab, on behalf of Bellator MMA, responded to the HipHopDX staff writer, stating that "50's post isn't true."

57.     Based on Bellator MMA's confirmation that 50 Cent had publicly lied about the Alleged Deal, on June 27, 2018, HipHopDX published an article on its website, hiphopdx.com, titled "50 Cent Didn't Sell 'Get The Strap' to Bellator MMA for $1M" (the "Article").  A true and correct copy of the article is attached as Exhibit C.

58.     The Article accurately reported that "A Bellator spokesman told HipHopDX that 50's post 'isn't true.'"

10

59.     The Article also reported that the spokesman "did confirm that the G-unit boss met with the mixed martial arts promotion's executives, as well as representatives from Bellator's parent company Viacom."

60.     The Article of course described 50 Cent's June 26 announcement over Instagram, including a reproduction of the Photograph.  As depicted in the HipHopDX article, underneath the Photograph was the  caption "Instagram/50cent."

### *50 Cent Seeks Revenge*
### *by Defaming HipHopDX*

61.     Upon information and belief, 50 Cent wanted to take action against HipHopDX to damage the magazine's reputation and prevent it and other news publications from contradicting 50 Cent and/or publishing unfavorable articles about him in the future.

62.     So, 50 Cent falsely told the world that HipHopDX was publishing wrong and unverified information.  On or about the evening of June 27, 2018, 50 Cent posted on his Instagram account a partial screenshot of the Article, which included the Article's headline, byline, and a part of the Photograph.  The screenshot prominently displayed the HipHopDX logo and website.  In his Instagram post, 50 Cent declared, "This shit is fake news Justin Ivey, you better go fact check.  Matter of fact I'm gonna sue you and this website for using my picture in the morning. get the strap" (the "Defamatory Statement.")  A true and correct copy of the Instagram post is attached as Exhibit D.

63.     50 Cent's statements concerning HipHopDX and its staff writer were false and defamatory statements of fact.

64.     Because 50 Cent was either directly or indirectly involved in discussions with Viacom and Bellator MMA, he knew that he had not actually sold the phrase "get the strap" for

$1 million and thus he knew, or recklessly disregarded, that the Article was accurate and that the Defamatory Statement was false.

65.     Moreover, given 50 Cent's personal knowledge of the negotiations and his prior Instagram posts about those negotiations, reasonable readers of the Defamatory Statement would have understood 50 Cent to be making statements about facts that were actually known by him.

66.     Accordingly, reasonable readers of the Defamatory Statement would have believed and did believe (mistakenly) that HipHopDX published incorrect information ("fake news") that it had not bothered to verify (i.e., did not "fact check").

67.     Indeed, readers of the Defamatory Statement posted on social media comments indicating that they believed that HipHopDX published "fake news," including "DX gotta quit spreading fake stories," "They love lying," "Knew it was fake," and "Get the facts."

68.     Upon information and belief, 50 Cent understands that a media publication's reputation for publishing the truth is one of its greatest asset.

69.     Upon information and belief, 50 Cent knows that his Instagram followers will loyally retaliate against those whom 50 Cent attacks.

70.     Upon information and belief, 50 Cent made these false and defamatory statements in bad faith, as a deliberate effort to damage the reputation HipHopDX and one of its staff writers, thus harming HipHopDX in its trade, business, and profession.

71.     50 Cent intended that his Instagram post of the Defamatory Statement be seen by a large audience.

72.     50 Cent's Instagram account has over 19 million followers.

73.     50 Cent's Instagram post of the Defamatory Statement has received, as of the date of this pleading, over 17,000 likes and nearly 5,000 comments.

74.     In the hours that followed, 50 Cent took extreme steps to call more attention to his Defamatory Statement, and to confirm to his followers that the statement was a serious assertion of fact.

75.     Specifically, he manufactured a claim against HipHopDX's publisher Cheri Media so he could keep the promise in his Defamatory Statement to "sue you."  Upon information and belief, within a little more than a day of making his Defamatory Statement, he obtained an assignment of rights in the Photograph from its photographer Christopher Conrad, applied to the U.S. Copyright Office for a copyright registration, and had his attorneys file the present lawsuit to claim "infringement" of a Copyright he previously had no interest in owning.

76.     The lawsuit immediately had the desired effect.  50 Cent posted the news coverage of his lawsuit again on Instagram.  Responses of social media followers indicate that many believed 50 Cent had sued HipHopDX over its supposedly false reporting.  These comments again illustrate that his followers regarded his "fake news" post as a statement of fact, and that they credited his Defamatory Statement as true.

### 50 Cent's Defamatory Statement Causes Reputational Harm to HipHopDX and Its Staff Writer

77.     HipHopDX has suffered and will suffer reputational and economic harm as a direct result of the publication of 50 Cent's Defamatory Statement.

78.     Multiple news outlets have reported on 50 Cent's false accusation that HipHopDX published "fake news," which has tarnished HipHopDX's credibility.

79.     Viewers of HipHopDX overlap substantially with 50 Cent's fanbase and his millions of Instagram followers.  50 Cent thus commands substantial influence over a significant part of HipHopDX's readership and potential readership.

80.     As a direct result of 50 Cent's Defamatory Statement, viewers of HipHopDX have posted public comments on HipHopDX's website accusing the magazine of publishing "fake news" and engaging in "garbage journalism," and commenting they would no longer visit the site.

81.     As a direct result of 50 Cent's Defamatory Statement, viewers of HipHopDX have posted public comments on its website, directing the magazine to "stop hating" on 50 Cent and threatening to "get the strap."

82.     As a direct result of 50 Cent's Defamatory Statement, the HipHopDX staff writer who authored the story has received multiple threatening and menacing comments, including a post on his Instagram account, "Say bye to your life idiot."

83.     As a direct result of 50 Cent's Defamatory Statement, individuals on Instagram have accused the HipHopDX writer of publishing false news and have posted statements including the following: "How does it feel to be getting sued for posting fake news."

## FIRST COUNTERCLAIM
## <u>DEFAMATION</u>

84.     Counterclaim Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

85.     50 Cent published the Defamatory Statement, which is a false and defamatory statement of fact concerning the reliability and accuracy of HipHopDX.

86.     50 Cent published the Defamatory Statement, without privilege, to third parties on his Instagram account, which has over 19 million followers.

87.     50 Cent published the Defamatory Statement with negligence and with actual malice.  50 Cent published the Defamatory Statement with knowledge of its falsity or with reckless disregard for its truth.

88.     The Defamatory Statement constitutes defamation per se because it disparages and discredits the business reputation of HipHopDX.

89.     50 Cent's publication of the Defamatory Statement has caused HipHopDX reputational and economic harm and will continue to cause it such harm.

## REQUEST FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Cheri Media, LLC prays for judgment against Counterclaim Defendant as follows:

1.     Granting Counterclaim Plaintiff money damages, including punitive damages, in an amount to be proven at trial but no less than $3,000,000 plus applicable interest; and

2.     Granting Counterclaim Plaintiff such other and further relief as the Court may consider equitable, just, and proper.

## DEMAND FOR A JURY TRIAL

Counterclaim Plaintiff demands a jury trial.


Dated:  New York, New York
        July 27, 2018


                        SHER TREMONTE LLP


                        By:  /s/ *Kimo S. Peluso*
                                Kimo S. Peluso
                                Erica A. Wolff
                                Amanda Ravich
                        90 Broad Street, 23rd Floor
                        New York, New York 10004
                        Tel: 212.202.2600
                        Email: kpeluso@shertremonte.com

                        *Attorneys for Defendant and Counterclaim Plaintiff*
                        *Cheri Media, LLC*